# THE CASSIMIR.

# THE LARA.

### Petition of CUBA DISTILLING CO.

### Petition of GRACE LINE, Inc.

District Court, S. D. New York.

Sept. 30, 1943.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson and Andrew J. McElhinney, both of New York City, of counsel), for Cuba Distilling Co.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Eugene F. Gilligan, of New York City, of counsel), for Grace Line, Inc.

HULBERT, District Judge.

These are cross-petitions for exoneration from or limitation of liability (Secs. 4283, 4285 and 4289 of the Revised Statutes of the United States, Title 46 U.S. C.A. §§ 183, 185 and 188).

These proceedings, heard together, arose out of a collision at sea, off the North Carolina Coast, in the early morning of February 26, 1942, between the vessels mentioned.

The Cassimir, which had been abandoned shortly after the collision, sunk and, together with her cargo, became a total loss.

The Lara sustained some structural damage and put into Charleston, South Carolina, for a survey and repairs.

Cuba Distilling Co., Inc., filed its petition on August 20, 1942 and Grace Line, Inc., thereupon filed its claim for damages to the Lara and incidental expenses, and for contingent liability.

Grace Line, Inc., filed its petition on August 26, 1942.

Claims were thereupon filed by Cuba Distilling Co., Inc., as owner of the Cassimir and by the Defense Supplies Corporation, as owner of her cargo of molasses.

The Chief Officer and six members of the crew of the Cassimir lost their lives, and claims therefor were paid by the owner of the Cassimir under a stipulation that they might be claimed on behalf of the Cassimir's damages depending upon the determination of liability as to the proximate cause of such deaths.

Advocates for each party have submitted extensive briefs in which they have respectively analyzed and discussed a plethora of cited cases.

The primary issue presented is chiefly one of fact and not without considerable difficulty in its solution.

Cuba Distilling Co., Inc., is and was a New York corporation having its office at 60 East 42nd St., New York, N.Y., and was the owner and operator of the Steamship Cassimir, her engines, boilers, etc., a single screw vessel of American registry, built at Hog Island in 1920 as a Three Island freight steamer, later converted to a tanker, equipped with oil burning steam turbines located amidship; 390 ft. long, 54.2 ft. beam, 27.8 ft. depth of hold, of 5030 tons gross and 3105 net tons.

Grace Line, Inc., was, and is a Delaware corporation having its principal place of business at 10 Hanover Square, New York, N.Y., and was owner and operator of the S. S. Lara, a single screw steel freighter of American registry, and also of the Three Island type, equipped with triple expansion reciprocating engines; 314.10¼ feet overall length, 44 ft. beam, 22.9 ft.

depth of hold; of 2987 gross tons and 1860 net tons.

Until the collision hereinafter mentioned each vessel was tight, staunch, fully manned, equipped and supplied, and in all respects seaworthy and fitted for the service in which she was engaged.

On or about Feb. 21, 1942, the Cassimir sailed from Santiago, Cuba, laden with a cargo of molasses, the property of Defense Supplies Corporation, organized under special statutory enactment of the United States, with its principal office in the City of Washington, D. C.

On Feb. 23, 1942 the Lara, loaded with a general cargo, departed from New York, N.Y. bound to Barranquilla, Colombia. In accordance with instructions of the United States Navy, both vessels refrained from displaying any navigation lights and steered a course as had been previously directed by the naval authorities.

On the early morning of Feb. 26, 1942, the Cassimir proceeded in a northeasterly direction, passing Frying Pan Shoal Buoy at 12:27 a.m. (E.S.T.) Here Chief Officer was on watch together with an able seaman who was with him on the bridge, as lookout; another able seaman was at the wheel. She was steaming at about 11 knots per hour.

At 2:01 a.m. (E.W.T.) the Lara passed 3.8 miles off Point Lookout Shoal Buoy. The second mate was on watch on the upper bridge at the top of the wheel house. An able seaman was stationed on the bridge as lookout and another seaman was at the wheel steering. The vessel was making speed of a little better than 10 knots per hour.

The moon had recently set; the night was dark and partly cloudy; there was practically no horizon but visibility was good; there was a moderate sea and a westerly wind, force about 4-5 on the Beaufort Scale. Before either vessel sighted the other, immediately preceding the collision, they were approaching each other upon the same course, or nearly so.

It is clear from the testimony:

That the Cassimir first sighted the Lara and immediately put her helm to port which, according to the modern technique of navigation, directed her course to the left, and turned on her range and side lights, but blew no whistle.

Almost simultaneously the navigators of the Lara observed a dark object which later proved to be the Cassimir "approaching on a nearly opposite course." The range and green side light of the Cassimir were seen when she switched on her navigation lights. The wheel of the Lara was immediately put hard right but she blew no whistle to indicate her course.

Within the brief interval after these vessels sighted each other, and almost at the moment of the contact between them, the Lara sounded a danger signal and also gave a signal (three blasts) to signify that her engines were going full speed astern; then her navigation lights were switched on. The Cassimir answered with several short blasts and also rang a general alarm throughout the ship. At about 5:40 a.m. Lara's time, the crash came and her bow pierced the starboard side of the Cassimir somewhat aft of amidships and about abreast of the engine room. A large hole was torn in the side of the Cassimir through which sea water poured into the engine room with such force and volume that it was impossible to operate the engine controls. Inspection disclosed that the Cassimir was in a sinking condition and in accordance with her Master's orders the lifeboats were lowered and the ship abandoned. Most of the crew of the Cassimir were able to and did leave the ship in safety, but some lost their lives, including the Chief Officer, and some were injured. The Lara stood by, and maintained her lights until daybreak, when all of the crew of the Cassimir, except two, were accounted for, and left the scene of the accident when the Cassimir disappeared beneath the water at 11 a.m.

## Discussion

On behalf of the Cassimir it is contended she first observed the Lara slightly on her starboard. When she put her wheel to the left she should have signaled with her whistle her intended course for a starboard to starboard passing (Title 33 U.S.C.A. § 103) or otherwise, since the vessels were "blacked out" by naval orders.

However, as the Cassimir threw on her lights it should have been apparent to the Lara, when she put her wheel to her right, that the vessels were then on crossing courses. It hardly seems possible that the navigating officer of the Lara could have expected, or even hoped, to cross the Cassimir's bow and, if he had intended

824

to go astern of her, certainly the more logical order would have been to put her wheel hard left.

The testimony of the second officer of the Lara is very unsatisfactory. He says he first became aware of the presence of the Cassimir when he saw a white light pop up which bore, perhaps, a half point on the Lara's port bow. He claims he could not tell the direction of the ship from that one white light although he knew she was not going away from him. The lookout of the Lara was then standing almost amidship; he and the second officer both saw the light at the same time. The lookout testified that he saw two white range lights and the green light simultaneously; as the second officer walked to the rail to order the quartermaster to put the wheel hard right he was watching the ship and when he saw the green light the Cassimir then bore 4 or 5 points off the port bow. He had testified on direct examination that he saw the green light a half minute after he observed the white light and that it was also a half minute from the time he gave the order to hard right, until he saw the green light; he thought then the Cassimir would clear; then he saw the Cassimir close in; it looked as if a collision could not be avoided and he decided that it was better to go astern and get out of the way. He testified on the trial the full speed astern was rung less than one minute after seeing the green light. He testified, immediately after the accident, before the Local Inspectors, that he did not reverse the engines until about two minutes after he saw the light on the Cassimir. He could not estimate the heading of the Lara at the time of the collision because she was swinging so fast.

Before the Local Inspectors the second officer testified that the Cassimir was 5 to 6 lengths away when he first saw the white lights but, upon the trial he finally concluded that he saw the white lights when the ship was three or four lengths away, and the green light some two minutes before the collision.

The testimony of the Master of the Lara was that he had come on the bridge, gave the whistle signals and turned on the Lara's lights.

The Cassimir is at some disadvantage through its inability to produce the Chief Officer, who was drowned.

The Master of the Cassimir, who had been continuously on duty during a gale off the coast of Florida, was resting in the chartroom. He was aroused by some disturbance on the bridge and heard the mate say: "I think we are going to clear it." "No, we are not going to clear it." Then the Chief Officer sung out to the helmsman to put the wheel hard left.

The Master immediately put on his shoes and went on deck. He observed by the telemotor that his rudder was hard left and the Lara approaching—it seemed about 40 feet away—just a little bit abaft of the beam on a 45 degree angle.

Assuming that the vessles were eight lengths apart, when the Cassimir sighted the Lara, they would each be traveling approximately a quarter of a mile in a minute and a half, or a half mile in three minutes. Actually the time was less because the distance was little more than half of that and the combined speed of the two vessels was 21 knots per hour.

### Disposition

It follows that both vessels must be held at fault. Each of the claimants, Cuba Distilling Co., and Grace Line, Inc., must bear the damage in equal parts, the one suffering the least to pay the other the amount necessary to make them equal, which amount, of course, is one half of the difference between the losses sustained. The North Star, 106 U.S. 17, 1 S.Ct. 41, 27 L.Ed. 91.

The aforesaid collision and sinking of the Cassimir and any loss, damage or destruction resulting therefrom was occasioned and incurred without the privity or knowledge of the petitioner Cuba Distilling Co., Inc., and without the privity or knowledge of petitioner Grace Line, Inc., but the statute of limitation of liability is not to be applied until the balance of damage has been struck; and then the party against whom the decree passes may, if otherwise entitled to it, have the benefit of the statute in respect to the balance which it is decreed to pay. The North Star, supra.

An interlocutory decree will be entered accordingly.