932

Sol H. Sleppin, of New York City, for libelant.

Duncan & Mount, of New York City, (Wilbur H. Hecht and Russell T. Mount, both of New York City, of counsel), for respondent.

John F. X. McGohey, U. S. Atty., of New York City (Edward L. Smith, of New York City, and Leavenworth Colby, of Washington, D. C., on the brief), for the United States, amicus curiae.

BRIGHT, District Judge.

This libel is to recover $5,000 war risk insurance upon the life of Thor August Lindberg who was a member of the crew of the S. S. Casimir. Libellant was the designated beneficiary of that seaman under the policy of insurance. That ship, on February 26, 1942, collided with the S. S. Lara, subsequently sank, and Lindberg lost his life.

The policy, issued by Lloyds and underwritten by the respondent and others, insured deceased and the other members of the crew of the steamship mentioned, at the time of the collision and loss of life, against war risks only, in accordance with the conditions of the Full Crew Form approved by the United States Maritime War Emergency Board and by their supplement to decision No. 1 of February 6, 1942.

That Form provided for insurance against loss of life and bodily injury to a member of the crew "directly occasioned by capture, seizure, destruction by men of war, piracy, takings at sea, arrest, restraints and detainments *and other warlike operations* (including collisions in convoy but with reservation of subrogation rights under owner's marine policies or against other colliding vessel, in the event it is determined that such collision is attributable to marine causes) and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes."

The facts are not in dispute. Thor August Lindberg concededly was insured under the provisions of the policy. Prior to February 26, 1942, the Cassimir sailed from Santiago, Cuba, bound for Baltimore, Maryland. It was a tank steamship, owned by the Cuba Distilling Company, Inc., and was laden with a full cargo of Cuban invert molasses, all of which was owned by the Defense Supplies Corporation. It was being transported under the direction of that corporation to the Curtis Bay Distillery of the United States Chemicals, Inc.,

of which the Cuba Distilling Company was a wholly owned subsidiary, at Curtis Bay, Baltimore, Maryland, and was intended to be distilled by the Chemicals Corporation into alcohol, under the direction of the United States War Production Board, to be used in the manufacture of smokeless powder and other war materials. The Defense Supplies Corporation was a corporate instrumentality and agency of the Government, and was used and empowered by the Government to purchase and acquire, among other things, materials, drugs, commodities and all things necessary to it in the prosecution of the war with Germany and Japan. The Cassimir, in accordance with the orders of the Navy Department of the United States, was proceeding on its voyage, completely blacked out and without showing any navigation lights of any kind, except that immediately before the collision the navigation lights on both ships were lighted. In the early morning of February 26, 1942, and while it was still dark, the Cassimir collided with the Lara, which was also proceeding without navigation lights and blacked out under the orders of the Navy Department. The Cassimir was badly damaged and shortly thereafter sank.

After the collision, in petitions for limitation of liability filed by both ships, both were held by this court guilty of fault. The Cassimir, D.C., 55 F.Supp. 822, affirmed Cuba Distilling Co. v. Grace Lines, Inc., 2 Cir., 143 F.2d 499.

The sole question involved is whether or not the loss of Lindberg's life was occasioned by "other warlike operations" underscored by me in the above quoted portion of the policy of insurance.

The Cassimir was not a war vessel. The cargo of the Cassimir was not capable of use for war in its then form. It was not consigned or to be delivered to the armed forces of this Government. The character of the Lara, of its cargo, or the nature of its business, were not shown. The collision and death, of course, occurred after the declaration of war against Germany and Japan.

■ It would seem to me that the determination of the meaning of the words "other warlike operations" might require a consideration of the nature of the vessels involved, their character and their destination. Clearly the insurance policy used the words in a comprehensive sense. The language used preceding these words, as well as that following other than "piracy" and the "application of sanctions under international agreements," are significant of active warlike operations. "Other warlike operations" then can have been intended to include acts or occurrences not already defined or mentioned. In the determination of what was meant the construction to be given should be in favor of the insured and against those who used the words in their contract. But likewise must be considered the fact that the purpose of the policy was to take care of hazards other than those covered by marine risk policies.

The Supreme Court has said in a somewhat similar case, that the words in question should be construed in harmony with the English courts. Queen Insurance Co. v. Globe & Rutgers Fire Insurance Co.. (The Napoli) 263 U.S. 487, 44 S.Ct. 175, 68 L.Ed. 402, affirming D.C., 278 F. 770, and 7 Cir., 282 F. 976.

It has been held both here and in England that the fact that the vessels were proceeding without lights under orders of the naval authorities would not bring them within the definition of warlike operations. Queen Insurance Co. v. Globe & Rutgers Fire Insurance Co., supra, 263 U.S. at page 492, 44 S.Ct. 175, 68 L.Ed. 402; Clan Line Steamers v. Liverpool & London W. R. Association, 1942, 58 T.L.T. 369, 73 Lloyd's L.R. 165–169; The Petersham, The Matiana, 1921, 1 A.C. 99–115. And although the cargo was ultimately intended to become a part of munitions of war, the carriage of it would not be a warlike operation unless such cargo at the time of the occurrence was of such a kind as to be then capable of use by the armed forces. That it had to be processed, as here, first into alcohol and then into smokeless powder, would be too remote. Clan Line Steamers v. Liverpool & London W. R. A., supra, 73 Lloyd's L. R. pages 169, 172, 173; Peninsular & Oriental Branch v. Commonwealth Shipping Rep., 1922, 16 Asp.Mar. Cas. 33-36, [1923] A.C. 191. The nature of the cargo has been held by the Second Circuit not determinative in the Queen Insurance Company case, 282 F. at page 981. And the carriage of the cargo to the Curtis Bay Distillery at Baltimore would not be to a war base. Owners of Larchgrove v. The Crown, 1919, 1 Lloyd's L.R. 498, 36 T.L.R. 108. And neither The Cassimir nor The Lara were war vessels owned by the Government or engaged in the transporta-

tion of war material from one war base to another.

██ It would appear, therefore, that the collision was purely the result of a marine peril and not the result of a warlike operation. See also Standard Oil Co. v. St. Paul F. & M. Insurance Co. (The Petter), D.C., 59 F.Supp. 470-475, 1945 A.M.C. 109.

The cases cited by libellant do not seem to help her. Link v. General Insurance Co. of America, D.C., 56 F.Supp. 275, arose out of a collision with a navy tanker carrying fuel oil and gasoline for use by the Navy and aircraft in Alaska while the Japanese were in the Aleutians and at Kiska. The tanker was carrying war stores from one war base to another. In the Coxwold case, [1942] T.L.Rep. 6/5/42 at page 263, 73 Ll. L.R. 1, the vessel was carrying petrol to the British military forces fighting in Norway. The collision in the Geelong case, Peninsular & Oriental Branch Service v. Commonwealth Shipping Rep., [1923] A.C. 191, 16 Asp.Mar.Cas. 33, was with a ship carrying military stores between war bases. The collision in The Argantock, [1921], 2 A.C. 141, was with a destroyer on patrol duty. In the Trevanion-Roanoke case, [1929] A.C. 534, the loss was the result of a collision with a mine planting ship returning to this country after the Armistice with a load of mines.

██ Public Law No. 17, 78th Congress, H.R. 133, 57 Stat. 45-51, to some extent relied upon by libellant, did not become a law until March 24, 1943 and does not and could not change the contract sued upon.

The libel is accordingly dismissed.